FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 24, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

CHARLES S.,[1]

Plaintiff,

vs.

KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2]

Defendant.

No. 1:20-cv-03108-MKD

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ECF Nos. 17, 18

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 17, 18.  The parties consented to proceed before a magistrate judge.  ECF No. 6.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 17, and grants Defendant's motion, ECF No. 18.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

ORDER - 2

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's

impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in

ORDER - 3

1  any other kind of substantial gainful work which exists in the national economy."

2  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

3      The Commissioner has established a five-step sequential analysis to

4  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

5  404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

6  considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

7  416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

8  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

9  404.1520(b), 416.920(b).

10     If the claimant is not engaged in substantial gainful activity, the analysis

11 proceeds to step two.  At this step, the Commissioner considers the severity of the

12 claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

13 claimant suffers from "any impairment or combination of impairments which

14 significantly limits [his or her] physical or mental ability to do basic work

15 activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

16 416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

17 however, the Commissioner must find that the claimant is not disabled.  *Id.*

18     At step three, the Commissioner compares the claimant's impairment to

19 severe impairments recognized by the Commissioner to be so severe as to preclude

20 a person from engaging in substantial gainful activity.  20 C.F.R. §§

ORDER - 4

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination,

ORDER - 5

the Commissioner must also consider vocational factors such as the claimant's age,

education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.

Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On July 28, 2016, Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging a disability

onset date of August 1, 2010.  Tr. 34, 119, 135, 267-79.  The applications were

denied initially and on reconsideration.  Tr. 165-71, 177-88.  Plaintiff appeared

before an administrative law judge (ALJ) on August 15, 2018, and the hearing was

continued so the record could be developed.  Tr. 62-73.  Plaintiff appeared before

an ALJ on May 8, 2019, and the hearing again was continued so the record could be developed.  Tr. 74-82.  Plaintiff appeared before an ALJ on August 21, 2019 for a hearing that resulted in a decision.  Tr. 83-107.  On September 4, 2019, the ALJ denied Plaintiff's claim.  Tr. 31-53.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through September 30, 2010, has not engaged in substantial gainful activity since August 1, 2010.  Tr. 36.  At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, status post open fracture and dislocation of the right elbow, left shoulder degenerative joint disease, depression, and a history of alcohol abuse.  Tr. 36-37.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 37.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> frequent climbing of ramps or stairs; frequent balancing, stooping, kneeling, and crouching; occasional climbing of ladders, ropes, or scaffolding; occasional crawling; frequent fingering, handling, and feeling with the right upper extremity; frequent overhead reaching with the left upper extremity; avoidance of concentrated exposure to non-weather related extreme cold, excessive vibration, and unprotected heights.  Further, the work is limited to 1 to 3 step tasks and occasional interaction with coworkers and the general public.

Tr. 39.

ORDER - 7

1    At step four, the ALJ found Plaintiff is unable to perform any of his past

2  relevant work.  Tr. 45.  At step five, the ALJ found that, considering Plaintiff's

3  age, education, work experience, RFC, and testimony from the vocational expert,

4  there were jobs that existed in significant numbers in the national economy that

5  Plaintiff could perform, such as production assembler, hand packager, and mail

6  clerk.  Tr. 46.  Therefore, the ALJ concluded Plaintiff was not under a disability, as

7  defined in the Social Security Act, from the alleged onset date of August 1, 2010,

8  through the date of the decision.  *Id.*

9    On May 22, 2020, the Appeals Council denied review of the ALJ's decision,

10  Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes

11  of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

12                              **ISSUES**

13    Plaintiff seeks judicial review of the Commissioner's final decision denying

14  him disability insurance benefits under Title II  and supplemental security income

15  benefits under Title XVI of the Social Security Act.  Plaintiff raises the following

16  issues for review:

17      1.  Whether the ALJ properly developed the record;

18      2.   Whether the ALJ properly evaluated Plaintiff's symptom claims; and

19      3.  Whether the ALJ properly evaluated the medical opinion evidence.

20  ECF No. 17 at 2.

ORDER - 8

1

**DISCUSSION**

2

**A. Record Development**

3      Plaintiff contends the ALJ failed to properly develop the record.  ECF No.

4  17 at 4-10.  The ALJ has an independent duty to fully and fairly develop a record

5  in order to make a fair determination as to disability, even where, as here, the

6  claimant was represented by counsel for a portion of the application period.

7  *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003); *see also Tonapetyan v.*

8  *Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Crane v. Shalala*, 76 F.3d 251, 255

9  (9th Cir. 1996).  "Ambiguous evidence, or the ALJ's own finding that the record is

10  inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty

11  to 'conduct an appropriate inquiry.'"  *See Tonapetyan*, 242 F.3d at 1150 (quoting

12  *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).

13      *1.  Workers' Compensation Records*

14      Plaintiff contends the ALJ erred in failing to obtain records related to

15  Plaintiff's workers' compensation claim.  ECF No. 17 at 5-8.  When Plaintiff

16  applied for Social Security benefits, Plaintiff reported Washington's Labor and

17  Industry office as a source of records; Plaintiff reported he had an injury in 2006

18  and was trying to reopen his prior claim.  Tr. 309.  The records indicate Plaintiff's

19  workers' compensation records were received by Disability Determination

20  Services on September 22, 2016.  Tr. 110, 165.  While the request sent by

ORDER - 9

Disability Determination Services to obtain Plaintiff's workers' compensation records is not in the file, the requests sent to other facilities demonstrate Disability Determination Services developed the record back to 2009-2010.  Tr. 411, 577, 583.  The records from Labor and Industry include a May 2014 evaluation and a July 2014 evaluation, both of which include a summary of the history of Plaintiff's workers' compensation claim.  Tr. 392-410.

Plaintiff's initial back injury occurred in 2006, and Plaintiff sought multiple forms of treatment for his injury through 2006.  Tr. 401-02.  Plaintiff was evaluated in 2008, and an examiner recommended a work conditioning program. Tr. 402.  In 2009, an examiner opined Plaintiff was at maximum medical improvement and assigned Plaintiff a category II level of lumbosacral impairment. Tr. 402-03.  Plaintiff accepted a settlement to take a payout, and received vocational services but did not complete the retraining program.  Tr. 394, 396, 403. In 2014, Plaintiff sought reopening of his claim; Plaintiff reported he tried to return to work in 2009 but was unable to work more than a few weeks, and his subsequent attempts were also unsuccessful.  *Id.*  Plaintiff sought reopening of the claim due to worsening pain and decreased mobility.  *Id.*  At the May 2014 examination, Plaintiff's Waddell's testing was positive for five out of five tests, and Plaintiff discontinued the examination early as he reported he did not feel well. Tr. 397-98.  The examiner opined Plaintiff's reported left shoulder and neck

ORDER - 10

immobility and decreased grip strength were not related to his back injury, and

opined there was no worsening of Plaintiff's back injury.  Tr. 398-99.  The July

2014 examiner opined Plaintiff had not had worsening of his back impairment, and

that the limitations on examination were inconsistent and unreliable, and likely due

to self-limiting behavior.  Tr. 409-10.  Plaintiff's application to reopen his claim

was denied.  Tr. 414-20.

Plaintiff contends the ALJ erred by failing to seek additional workers'

compensation records, including evidence of Plaintiff's permanent disability,

settlement, and work retraining.  ECF No. 17 at 6-7.  However, Plaintiff

acknowledges that Disability Determination Services already developed the record

by requesting Plaintiff's workers' compensation records, and they received

responsive records.  ECF No. 17 at 7 (citing Tr. 393-94).  As discussed *supra,* the

workers' compensation records in file discuss Plaintiff's permanent disability

rating, receipt of a settlement, and failure to complete a work retraining program.

If additional workers' compensation records exist that Labor and Industry failed to

include in response to Disability Determination Services' request, Plaintiff had the

opportunity to request the records from Labor and Industry, and submit the

records, or provide a copy of Labor and Industry's response that indicates the

timeframe and number of pages of records in their possession.  As Disability

Determination Services requested Plaintiff's workers' compensation records, and

ORDER - 11

received responsive records, the ALJ found the evidence was not ambiguous nor

inadequate to make a determination, the ALJ did not error in declining to order

additional workers' compensation records. *See Tonapetyan*, 242 F.3d at 1150.

Plaintiff also argues the failure to obtain the additional workers'

compensation records is harmful because the records contain evidence of

Plaintiff's permanent disability. ECF No. 17 at 7. However, the records indicate

Plaintiff's impairment was labeled a category II lumbosacral spine impairment. Tr.

393. A category II impairment is defined as, "mild low back impairment, with

mild intermittent objective clinical findings of such impairment but no significant

x-ray findings and no significant objective motor loss. Subjective complaints

and/or sensory losses may be present." Wash. Admin. Code 296-20-280(2).

Plaintiff has not demonstrated that any additional records containing evidence of

his mild back impairment would have impacted the ALJ's decision, thus any error

is harmless. *See Molina,* 674 F.3d at 1115.

2. *Neuropsychological Consultative Examination*

Plaintiff contends the ALJ erred by not ordering a neuropsychological

consultative examination, because the record was ambiguous and insufficient as to

his potential neurocognitive disorder, and because there were inconsistent opinions

in the record. ECF No. 17 at 8-9; ECF No. 19 at 2. Plaintiff testified he has a

brain injury that prevented him from completing retraining. Tr. 67, 71, 79, 93-95.

ORDER - 12

There are numerous inconsistencies in the record related to Plaintiff's reported brain injury.  Plaintiff did not allege a brain injury in his application for benefits, Tr. 303, but reported in his function report that he has difficulties with memory and decision making due to a brain injury, Tr. 330.  The 2014 summary of Plaintiff's workers' compensation claim contains no mention of a brain injury.  Tr. 392-95. When asked about his medical history at one of the 2014 workers' compensation examinations, Plaintiff reported a concussion in 2007 but no brain injury.  Tr. 396. In 2017, Plaintiff reported a brain injury in 2009 or 2011.  Tr. 511.  One medical record notes a history of traumatic brain injury, Tr. 649, while in other treatment records, a "head injury" is noted, but there is no mention of a brain injury, and at multiple visits Plaintiff did not report a brain injury nor is one documented in his medical history, Tr. 413, 442, 670.  A self-reported history of brain surgery is noted in some records, Tr. 440, 563, however there are no records related to brain surgery nor did Plaintiff provide any details regarding the reported surgery.

At a psychological evaluation with Dr. Cline, Plaintiff reported a 2008 brain injury.  Tr. 484.  Plaintiff reported he had a head injury that resulted in a loss of consciousness, and reported he was in a coma for a period of time and in an intensive care unit for two days.  Tr. 485.  Plaintiff reported memory issues since his head injury, but reported no neurological follow-up.  *Id.*  Dr. Cline opined Plaintiff had moderate to marked limitations due to neurocognitive deficits, and

1  opined a neuropsychological consult would be needed to evaluate the condition.

2  Tr. 485, 487.  Dr. Cline also noted Plaintiff's Rey score indicates a below average

3  level of effort, although his TOMM score was sufficient to rule out malingering.

4  Tr. 485.  However, Dr. VanFossen reviewed Dr. Cline's evaluation and noted Dr.

5  Cline's determination that the score was sufficient to rule out malingering was not

6  supported by the literature on the TOMM.  Tr. 501.  Dr. VanFossen opined a

7  diagnosis of a neurocognitive disorder was not supported in the context of no

8  significant neuropsychological testing and Plaintiff failing the only validity test

9  given at Dr. Cline's examination.  *Id.*

10  Plaintiff's date last insured was September 30, 2010, and a

11  neuropsychological examination in the present time would not provide relevant

12  information as to Plaintiff's functioning at his date last insured.  Further, Disability

13  Determination Services developed the records back to 2009 and did not receive

14  any responsive medical records that contain objective evidence of Plaintiff's

15  reported head injury, coma, nor intensive care unit treatment.  Plaintiff reported a

16  head injury more than one year prior to his alleged onset date, and Plaintiff has not

17  had any neurological follow-up during the relevant time period.  Tr. 396, 485.

18  While Dr. Cline gave a provisional diagnosis of mild neurocognitive disorder due

19  to a traumatic brain injury, Tr. 642, Plaintiff has not been diagnosed with a brain

20  injury nor neurocognitive disorder, and Plaintiff has not provided any objective

ORDER - 14

1    evidence of limitations caused by his reported brain injury.  The only testing in the

2    record related to the reported condition is Dr. Cline's examination, and Dr.

3    VanFossen found Dr. Cline's diagnoses and opinions were unsupported by the

4    evidence, and noted Plaintiff has no functional impairment due to a mental health

5    diagnosis that would prohibit work tasks, in the context of poor credibility on

6    validity testing.  Tr. 37, 501.  Given the lack of any objective evidence to support

7    Plaintiff's allegation of a brain injury, the lack of a diagnosis of a neurocognitive

8    disorder, Plaintiff's lack of any neurological follow-up during the relevant period,

9    Plaintiff failing the validity testing during the only psychological testing in file,

10    and Dr. VanFossen's opinion that Dr. Cline's diagnoses and opinions were not

11    supported by the evidence, there is no objective evidence to support Plaintiff's

12    contention that he has limitations due to a brain injury that required further

13    development.  Plaintiff has not demonstrated that the evidence was ambiguous or

14    insufficient to make a determination.

15            The instant case is distinguishable from a recent Ninth Circuit holding which

16    found an ALJ erred in failing to develop the record.  The Ninth Circuit held in

17    *Alderson* that the ALJ erred in failing to order a new psychological examination.

18    *Alderson v. Saul*, No. 20-35638, 2021 WL 2624128, at *1 (9th Cir. June 25, 2021).

19    In *Alderson,* a medical expert opined a new examination would be helpful, and

20    Plaintiff had a history of mental health diagnoses and abnormal psychological

ORDER - 15

findings.  Like *Alderson,* the Plaintiff here has not sought ongoing care for the

alleged condition.  *See id.*  However, here, Plaintiff has not provided objective

evidence of a neuropsychological condition, and he does not have a history of

abnormal neuropsychological findings.  While Dr. Cline opined a

neuropsychological examination would be needed, Tr. 487, Dr. VanFossen found

Dr. Cline's opinion was not supported by the examination, and found Plaintiff had

failed the validity testing, Tr. 501.  Unlike the Plaintiff in *Alderson,* Plaintiff here

lacks the objective evidence to support the need for an examination.  The ALJ's

finding that Plaintiff did not have a severe neurocognitive disorder is supported by

substantial evidence and the ALJ did not err in not ordering a neuropsychological

consultative examination.  Plaintiff is not entitled to remand on these grounds.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting his symptom claims.  ECF No. 17 at 10-15.  An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some

degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted). General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v.

Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

explain why it discounted claimant's symptom claims)). "The clear and

convincing [evidence] standard is the most demanding required in Social Security

cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.

Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting

effects of a claimant's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in

an individual's record," to "determine how symptoms limit ability to perform

work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his

symptoms were not entirely consistent with the evidence.  Tr. 44.

### 1. Activities of Daily Living

The ALJ found Plaintiff's activities of daily living were inconsistent with his

symptom claims.  Tr. 44-45. The ALJ may consider a claimant's activities that

undermine reported symptoms.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

2001).  If a claimant can spend a substantial part of the day engaged in pursuits

involving the performance of exertional or non-exertional functions, the ALJ may

find these activities inconsistent with the reported disabling symptoms.  *Fair v.*

*Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a

claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

Here, the ALJ found Plaintiff's activities of daily living are inconsistent with his alleged disabling limitations. Tr. 44. Plaintiff reported being able to independently handle his personal needs and household chores, including washing dishes, vacuuming, sweeping, mowing the lawn, and doing laundry, shop for food, and prepare meals. Tr. 44 (citing Tr. 331-34, 485, 493). Plaintiff stated he can lift up to 40 pounds, stand for 45 minutes, sit for an hour, drive for several hours, walk up and down stairs without a handrail, and grocery shop with a pushcart. Tr. 493. Plaintiff reported caring for his disabled parents and a dog. Tr. 44 (citing Tr. 331). Plaintiff also reported driving, taking public transit, camping, and fishing. Tr. 44 (citing Tr. 332-34).

Plaintiff argues the ALJ failed to make specific findings as to how his activities are inconsistent with his allegations, and the ALJ did not obtain enough information on the level of care Plaintiff provides for his parents. ECF No. 17 at 11-12. However, Plaintiff reported spending his days helping his parents, Tr. 331, including helping clean the kitchen, taking the garbage out, assisting with dishes,

doing laundry, and shopping.  Tr. 89-91.  Plaintiff reported spending time on

weekends with a family friend, Tr. 334, and reported no difficulties with standing,

reaching, sitting, kneeling, stair climbing, concentration, completing tasks,

understanding, or following instructions.  Tr. 335.  Plaintiff reported going to his

sibling's home, and helping him or her vacuum.  Tr. 96.  Plaintiff's reports indicate

that he engages in a variety of personal care and household tasks, as well as social

activities, in a typical week, and he has reported capabilities that are beyond what

he has alleged in his application for benefits.  On this record, the ALJ reasonably

concluded that Plaintiff's activities of daily living are inconsistent with his

symptom claims. This finding is supported by substantial evidence and was a clear

and convincing reason to discount Plaintiff's symptom complaints.

### 2. *Inconsistent Objective Medical Evidence*

The ALJ found the objective medical evidence was inconsistent with

Plaintiff's symptom claims.  Tr. 40-45.  An ALJ may not discredit a claimant's

symptom testimony and deny benefits solely because the degree of the symptoms

alleged is not supported by objective medical evidence.  *Rollins*, 261 F.3d at 857;

*Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601;

*Burch*, 400 F.3d at 680.  However, the objective medical evidence is a relevant

factor, along with the medical source's information about the claimant's pain or

other symptoms, in determining the severity of a claimant's symptoms and their

ORDER - 20

disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

The ALJ found Plaintiff's limitations in his upper extremities were not as severe as he alleged. Tr. 40. In 2014, Plaintiff had slightly decreased strength in his right arm, with full range of motion, no swelling, and intact sensation. *Id.* (citing Tr. 443, 462). While Plaintiff reported left shoulder pain, his neurological examination was normal. Tr. 40 (citing Tr. 409). In 2016, Plaintiff had decreased range of motion in his left shoulder but normal reflexes and sensation in his upper extremities. Tr. 40 (citing Tr. 426). At another examination in 2016, Plaintiff was able to make a full fist and touch his thumb to each finger on both hands, he could manipulate a coin, button, bow, and doorknob, he had full strength and normal reflexes and sensation, and he had only slightly decreased strength on the right. Tr. 40-41 (citing Tr. 494-95). In 2017, Plaintiff had full range of motion and no swelling of his right elbow, and he had a normal EMG and nerve conduction study, Tr. 41 (citing Tr. 667, 686); although he had slight decreased reflexes at one exam and a positive Tinel's sign at another, Plaintiff generally had normal sensation, full strength, no atrophy, and normal range of motion, Tr. 41 (citing Tr. 563, 681, 685). In 2018 and 2019, Plaintiff had only slightly reduced strength, and he had reduced range of motion, but imaging showed only mild degenerative changes, with a

possible labral tear, and Plaintiff reported being able to engage in yardwork and

lifting up to 25 to 30 pounds.  Tr. 41 (citing Tr. 670, 672-73, 677, 679).

The ALJ also found Plaintiff's back impairment was not as severe as

alleged.  Tr. 41.  Imaging showed only mild degenerative changes in the lumbar

spine.  *Id.* (citing Tr. 393, 409, 421).  At a 2014 examination, Plaintiff engaged in

self-limiting behavior, and the examiner opined there was no indication of an

underlying disk herniation nor lumbar radiculopathy.  Tr. 41 (citing Tr. 409).

Plaintiff generally had normal reflexes and sensation in his lower extremities, and

generally had normal range of motion and gait, despite some abnormalities.  Tr. 42

(citing Tr. 413, 493-95, 668-69, 673).

The ALJ also found Plaintiff's reported limitations due to mental health or

neurocognitive disorders were not supported by the evidence.  Tr. 43.  Plaintiff was

generally oriented, with a normal mood, and denied depression and anxiety.  *Id.*

(citing Tr. 669, 673, 684).  At a 2016 psychological evaluation, Plaintiff

demonstrated some abnormalities on examination, but had normal orientation, fund

of knowledge, concentration, and insight/judgment, he was able to recall three

items immediately and two out of three after a delay with prompting, and he

correctly performed six digits forward and four digits backward, and serial

subtraction testing.  Tr. 43, 487-88.  Dr. VanFossen also reviewed the 2016

evaluation and found Plaintiff was not credible due to his failure of the validity

measure.  Tr. 37 (citing Tr. 501).  While Plaintiff argues the ALJ did not cite to specific inconsistent evidence, ECF No. 17 at 14, the ALJ gave a thorough discussion of Plaintiff's symptom claims and the inconsistent objective evidence. On this record, the ALJ reasonably concluded that Plaintiff's symptom claims are inconsistent with the objective medical evidence.  This finding is supported by substantial evidence and was a clear and convincing reason, along with the other reason offered, to discount Plaintiff's symptom complaints.

**C. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinion of R.A. Cline, Psy.D.  ECF No. 19 at 15-21.  There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).  Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's opinion.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

ORDER - 23

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

On August 23, 2016, Dr. Cline, an examining source, performed a psychological examination and rendered an opinion on Plaintiff's functioning. Tr. 484-88. Dr. Cline diagnosed Plaintiff with major depressive disorder, recurrent, moderate, exacerbated by a traumatic brain injury; unspecified anxiety-related disorder with features of social anxiety and generalized anxiety disorder; alcohol use disorder, mild to moderate; and a provisional diagnosis of mild neurocognitive disorder due to traumatic brain injury. Tr. 486. Dr. Cline opined Plaintiff's

ORDER - 24

1    depressed mood/irritability causes moderate limitations, Plaintiff's neurocognitive

2    deficits potentially cause moderate to marked limitations, but further testing and a

3    neuropsychological consult is necessary to evaluate the condition, and Plaintiff's

4    anxiety/social discomfort causes mild limitations.  Tr. 485.  Dr. Cline further

5    opined Plaintiff has moderate limitations in his ability to understand, remember,

6    and persist in tasks by following very short and simple instructions; understand,

7    remember, and persist in tasks by following detailed instructions; learn new tasks;

8    adapt to changes in a routine work setting; make simple work-related decisions,

9    ask simple questions, or request assistance; set realistic goals and plan

10   independently; and opined Plaintiff's overall severity rating is moderate.  Tr. 486-

11   87.  Dr. Cline opined Plaintiff has marked limitations in his ability to communicate

12   and perform effectively in a work setting; maintain appropriate behavior in a work

13   setting; and complete a normal workday/workweek without interruptions from

14   psychologically based symptoms; and opined Plaintiff has no to mild limitations in

15   the remaining areas.  *Id.*  Dr. Cline opined Plaintiff's limitations were expected to

16   last six to 12 months with treatment, cessation of alcohol would be helpful in

17   managing Plaintiff's depression, and noted Plaintiff needed a neuropsychological

18   evaluation.  Tr. 487.  The ALJ gave Dr. Cline's opinion some weight.  Tr. 43.  As

19   Dr. Cline's opinion is contradicted by the opinions of Dr. Van Fossen, Tr. 501, Dr.

20   Robinson, Tr. 129-31, and Dr. Donahue, Tr. 157-59, the ALJ was required to give

1  specific and legitimate reasons, supported by substantial evidence, to reject the

2  opinion.  *See Bayliss*, 427 F.3d at 1216.

3        The ALJ found Dr. Cline's opinion that Plaintiff has marked limitations is

4  not supported by the evidence and instead relies on Plaintiff's subjective

5  complaints.  Tr. 37, 43.  A medical opinion may be rejected by the ALJ if it was

6  inadequately supported by medical findings and based too heavily on the

7  claimant's properly discounted complaints.  *Bray*, 554 F.3d at 1228; *Tonapetyan*,

8  242 F.3d at 1149.  While Plaintiff subjectively reported memory loss, irritability,

9  and getting into fights with others, the medical records generally indicate he had a

10 normal memory, and did not have issues getting along with others.  Tr. 43-44

11 (citing Tr. 493, 681, 685).  Dr. Cline summarized Plaintiff's reported symptoms in

12 several sections of the form.  Tr. 484-88.  In the section where Dr. Cline was asked

13 to document observations of Plaintiff's abnormal functioning, she instead only

14 detailed Plaintiff's self-report for multiple categories.  Tr. 488.  As such, the ALJ

15 did not error in concluded that Dr. Cline's opinion relied heavily on Plaintiff's self-

16 report.

17       The ALJ noted several inconsistencies between Dr. Cline's opinion and the

18 objective evidence.  Tr. 37, 43. Plaintiff has reported spending time with others

19 three to four times per week.  Tr. 38 (citing Tr. 335-36).  The ALJ noted there was

20 no evidence in the record that indicated Plaintiff has difficulty with concentration,

persistence, or pace.  Tr. 43-44.  The only psychological examination file is Dr. Cline's examination, and the ALJ noted Plaintiff failed the validity testing during the examination.  Tr. 37 (citing Tr. 501).  Dr. Cline suggested Plaintiff have neuropsychological testing, however it was never performed, and Plaintiff reported never having any neurological follow-up.  Tr. 37, 485.  Plaintiff has also repeatedly denied symptoms of anxiety.  Tr. 37 (citing Tr. 561, 669, 684).  The ALJ's finding that Dr. Cline's opinion that Plaintiff has marked limitations is inconsistent with the evidence is supported by substantial evidence.

Plaintiff also contends the ALJ erred in failing to incorporate Dr. Cline's opinion regarding Plaintiff's moderate limitations into the RFC.  ECF No. 17 at 16-17.  Dr. Cline opined Plaintiff has moderate limitations in several areas of functioning discussed *supra,* including following simple and detailed instructions, learning new tasks, and adapting to changes.  Tr. 486.  The ALJ accounted for Dr. Cline's opinion by limiting Plaintiff to one to three-step tasks, and occasional interactions with coworkers and the general public.  Tr. 39.  While Plaintiff argues the ALJ failed to properly account for the moderate limitations in the RFC, ECF No. 17 at 16-17, the ALJ reasonably interpreted Dr. Cline's opinion and accounted for it in the RFC.  Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed.  *See Rollins*, 261 F.3d at 857.  The Court must consider the ALJ's decision in the context of "the entire record as a whole,"

ORDER - 27

and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).  Plaintiff is not entitled to remand on these grounds.

### CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED August 24, 2021.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 28